## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LABORERS' PENSION FUND and LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND, and CATHERINE WENSKUS, Administrator of the Funds, <br><br> Plaintiffs, <br><br> v. <br><br> DUNIGAN CONSTRUCTION, INC., an involuntarily dissolved Illinois corporation, and RODNEY DUNIGAN, individually, <br><br> Defendants. | Case No.: 19 C 407 |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and Catherine Wenskus, Administrator of the Funds, (collectively "Funds") by their attorneys, Patrick T. Wallace, Amy Carollo, Ryan Liska, Kate Mosenson, and Sara Schumann for their Complaint against Defendants Dunigan Construction, Inc., an involuntarily dissolved Illinois corporation, and Rodney Dunigan, individually state:

## COUNT I

### (Failure To Pay Benefit Contributions—Dunigan Construction and Rodney Dunigan)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.     Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.     The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4.     Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.     Defendant Dunigan Construction (hereinafter the "Company") is an involuntarily dissolved Illinois corporation, effective June 8, 2018. The Company does business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

2

6.     Defendant Rodney Dunigan (hereinafter "Dunigan") is the owner and president of Dunigan Construction at the time of involuntary dissolution and prior to dissolution, and is joint and severally liable for all debts and liabilities of the Company to the Funds incurred in carrying on the Company's business after the date of involuntary dissolution.  805 ILCS 5/1 et seq.

7.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Mid-America Regional Bargaining Association ("MARBA") has been a party to various collective bargaining agreements ("Agreement") between MARBA and the Union, the most recent of which became effective June 1, 2017.  MARBA represents various contractors who have assigned their bargaining rights to MARBA and as a result, are bound to the Agreements between MARBA and the Union as well as the Funds' respective Agreements and Declarations of Trust.  On or around July 11, 2006, the Company assigned its bargaining rights to MARBA and, as a result, is bound by the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust. (A copy of MARBA's acknowledgment of the Company's assignment is attached hereto as Exhibit A.)

8.     The Company entered into an Installment Note ("Note") with the Funds on or about March 9, 2017.  A true and accurate copy of the Note is attached hereto as Exhibit B.

9.     Rodney Dunigan signed a Guaranty of Payment and Indemnification ("Guaranty") on or about March 9, 2017 individually guaranteeing payment of the amounts due at the time of the Note and Guarantee are entered into and/or are incurred and become due and owing for the duration of the note including interest, liquidated damages, audit costs, and attorneys' fees and costs.  A true and accurate copy of the Guaranty is attached hereto as Exhibit C.

3

10. Paragraph 7 of the Note provides that

Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Fund's respective Agreements and Declarations of Trust. If the contributions are not paid by the 10th day following the date on which the payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note. All amounts described in Paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this Note.

11. Paragraph 1 of the Guaranty provides that

The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twenty-four (24) month payment period including interest and liquidated damages for the late or unpaid payments due on the note: and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, . . . The Guarantor also agrees to be personally liable for all monthly benefit contributions and/or union dues owed from the Company to the Funds, the District Council and all ancillary funds that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

12. Paragraph 13 of the Guaranty provides that

The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement [sic] against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees.

13.     The Funds have been duly authorized by the Construction and General Laborers'
District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest
Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety
Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust
("LECET"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the
CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the
CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor
Management Committee Cooperative ("LDCLMCC"), the CARCO Industry Advancement Fund
("CARCO"), the Industry Advancement Fund ("IAF"), and the Illinois Small Pavers'
Association ("ISPA") to act as an agent in the collection of contributions due to those Funds.

14.     The Agreement and the Funds' respective Agreements and Declarations of Trust
obligate the Company to make contributions on behalf of its employees covered by the
Agreement for pension benefits, health and welfare benefits, and/or benefits for the Training
Fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the
employees covered under the Agreement and the amount of contributions to be remitted to the
Funds on behalf of each covered employee.  Pursuant to the terms of the Agreement and the
Funds' respective Agreements and Declarations of Trust, contributions which are not submitted
in a timely fashion are assessed liquidated damages plus interest.

15.     The Agreement and the Funds' respective Agreements and Declarations of Trust
require the Company to submit its books and records to the Funds on demand for an audit to
determine benefit contribution compliance.

16.     The Agreement requires the Company to obtain and maintain a surety bond to
guaranty the payment of future wages, pension and welfare benefits.

5

17.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company and Mr. Dunigan have performed covered work during the months of September and October 2018 and December 2018 forward and have:

(a)     failed to report and pay contributions owed to Plaintiff Laborers' Pension Fund from September and October 2018 and December 2018 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to report and pay all contributions owed to Plaintiff Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity from September and October 2018 and December 2018 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to report and pay all contributions owed to Laborers' Training Fund from September and October 2018 and December 2018 forward, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(d)     failed to report and pay all contributions owed to one or more of the other affiliated funds identified above from September and October 2018 and December 2018 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries;

18.     The Company's and Mr. Dunigan's failure to submit benefit reports violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185.

19.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust Agreements, the Note and Guarantee, and federal common law, the Company and Mr. Dunigan are liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid or untimely paid contributions, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Dunigan Construction and Rodney Dunigan:

a.      ordering the Defendants to submit and pay reports and contributions for the period of September and October 2018 and December 2018 forward and submit the Company's books and records to an audit upon demand;

b.      entering judgment in sum certain in Plaintiffs' favor and against Defendants on the amounts shown due and owing as pleaded in the Complaint and as revealed by the reports to be submitted, and as revealed by the audit to be conducted including unpaid contributions, interest, liquidated damages, accumulated liquidated damages and interest on late-paid reports, shortages, audit costs, and Plaintiffs' attorneys' fees and costs; and

c.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

**(Failure To Submit Union Dues—Dunigan Construction and Rodney Dunigan)**

20.     Plaintiffs reallege paragraphs 1 through 19 of Count I.

21.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers

7

union dues which have been or should have been deducted from the wages of covered employees.

22.     Notwithstanding the obligations imposed by the Agreement, the Company and Dunigan have performed covered work for the months of February 2017 and February through October 2018 and failed to submit and pay dues that were or should have been withheld from the wages of its employees performing covered work for the period of February 2017 and February through October 2018, thereby depriving the Union of income and information necessary to determine dues submission compliance.

23.     Any dues that are paid late are assessed 10% liquidated damages.

24.     The Company submitted and paid its November through December 2016, January, April through June, August through November 2017, and January and November 2018 dues reports late.  As a result, $375.26 is owed in liquidated damages on the above reports.

25.     Pursuant to the Agreement, the Company and Mr. Dunigan are liable to the Funds for the unpaid union dues, shortages, interest, liquidated damages, accumulated liquidated damages, audit costs, and reasonable attorneys' fees and costs as the Union's collection agent and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Dunigan Construction and Mr. Dunigan:

a.     ordering the Company and Mr. Dunigan to submit and pay reports and dues for the period of February 2017 and February through October 2018 and submit the Company's books and records to an audit upon demand;

b.     entering judgment in sum certain in Plaintiffs' favor and against Defendants on the amounts shown due and owing pursuant to the amounts pleaded in the Complaint, shown as

8

owing from the reports to be submitted and audit to be conducted, including unpaid contributions, interest, liquidated damages, accumulated liquidated damages and on late-paid reports, audit costs, and Plaintiffs' attorneys' fees and costs; and

  c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Failure To Pay Benefit Contributions Revealed as Delinquent Pursuant to an Audit )

  26. Plaintiffs reallege paragraphs 1 through 19 of Count I as though fully set forth herein.

  27. An audit of Company's books and records for the time period of October 1, 2014 through September 30, 2016 revealed that Company performed covered work during the audit period, but that notwithstanding the obligations imposed by the Agreement, and the Funds' respective Agreements and Declarations of Trust, Company and Mr. Dunigan have:

  (a) failed to report and pay contributions in the amount of $27,327.73 owed to Plaintiff Laborers' Pension Fund for the audit period of October 1, 2014 through September 30, 2016, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

  (b) failed to report and pay contributions in the amount of $25,880.64 owed to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of October 1, 2014 through September 30, 2016, thereby depriving the Welfare Fund of contributions, income and information needed to administer the

Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)     failed to report and pay contributions in the amount of $10,196.89 owed to Plaintiff Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of October 1, 2014 through September 30, 2016, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d)     failed to report and pay contributions in the amount of $1,296.63 owed to Laborers' Training Fund for the period of October 1, 2014 through September 30, 2016, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e)     failed to report and pay contributions in the amount of $933.98 owed to Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC") for the audit period of October 1, 2014 through September 30, 2016, thereby depriving the LDCLMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f)     failed to report and pay contributions in the amount of $25.97 owed to Mid-America Regional Bargaining Association CISCO Uniform Drug/Alcohol Abuse Program ("MARBA CISCO") for the audit period of October 1, 2014 through September 30, 2016, thereby depriving the CISCO of contributions, income and

information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(g)     failed to report and pay contributions in the amount of $181.56 owed to Mid-America Regional Bargaining Association Industry Advancement Fund ("MARBA IAF") for the audit period of October 1, 2014 through September 30, 2016, thereby depriving the MARBA of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(g)     failed to report and pay contributions in the amount of $515.72 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit of October 1, 2014 through September 30, 2016, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

A true and accurate copy of the audit and audit summary sheet are attached hereto as Exhibits D and E respectively.

28.     Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company and Mr. Dunigan owe liquidated damages plus interest on all unpaid contributions revealed by the audit for the period of October 1, 2014 through September 30, 2106.

29.     Under the terms of the Agreement, the Funds' respective Agreements and Declarations of Trust, Note and Guarantee, and federal common law, Company and Mr. Dunigan are liable for the costs of any audit which reveals unpaid contributions. Accordingly, Company

and Mr. Dunigan owe the Funds $6,786.26 in audit costs for the audit for the period of October 1, 2014 through September 30, 2016. *See* Exhibit E.

30.     Company's and Mr. Dunigan's actions in failing to submit payment upon the audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

31.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust Agreements, Note and Guarantee, and federal common law, the Company and Mr. Dunigan are liable to the Funds for unpaid contributions, as well as interest, accumulated liquidated damages and liquidated damages on the unpaid contributions, audit costs, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants Dunigan Construction and Rodney Dunigan:

a.     entering judgment in sum certain in favor of the Funds and against Defendants on the amounts due and owing pursuant to the audit for the period of October 1, 2014 through September 30, 2016, including contributions, interest, liquidated damages, accumulated liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT IV

### (Failure to Pay Union Dues Revealed as Delinquent Pursuant to an Audit)

32.     Plaintiffs reallege paragraphs 1 through 19 of Count I and paragraph 21 of Count II as though fully set forth herein.

33.     Notwithstanding the obligations imposed by the Agreement, Company and Mr. Dunigan performed covered work during the audit period of October 1, 2014 through September 30, 2016, and Company and Mr. Dunigan failed to withhold and/or submit payment of $7,799.16 in union dues that were or should have been withheld from the wages of employees for the period of October 1, 2014 through September 30, 2016, thereby depriving the Union of information and income. *See* Exhibits D and E.

34.     Pursuant to the Agreement, Company and Mr. Dunigan owe liquidated damages on all late or unpaid dues as revealed by the audit for the period of October 1, 2014 through September 30, 2016, plus audit costs, interest, accumulated liquidated damages, and reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants Dunigan Construction and Rodney Dunigan:

a.     entering judgment in sum certain in favor of the Funds and against Company and Mr. Dunigan on the amounts due and owing pursuant to the audit for the period of October 1, 2014 through September 30, 2016, including dues, liquidated damages, accumulated liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

   b.    awarding Plaintiffs any further legal and equitable relief as the Court deems

appropriate.

January 17, 2019                              Laborers' Pension Fund, et al.


                                             By: /s/ Amy Carollo

Patrick T. Wallace
Amy Carollo
Ryan Liska
Kate Mosenson
Sara Schulmann
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540

# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO

101 BURR RIDGE PARKWAY • SUITE 300 • BURR RIDGE, IL 60521 • PHONE: 630/655-8289 • FAX: 630/655-8833

### INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **Dungan Const.** _____, ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092, together with any other Local Unions that may come within the Union's jurisdiction ("Local Union"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** The Employer, in response to the Union's claim that it represents an uncoerced majority of the Employer's Laborer employees, acknowledges and agrees that there is no good faith doubt that the Union has been authorized to and in fact does represent such majority of its Laborer employees. Therefore, the Union is hereby recognized as the sole and exclusive collective bargaining representative for the employees now and hereafter employed in the Laborer bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board certified election. The Employer not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension thereof, without written approval from the Union.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreements, as designated by the Union, between the Union and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.D.C.N.I.C.A.W.G.C., the Chicago Demolition Contractors' Association, the Illinois Environmental Contractors Association, the Lake County Contractors Association, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions has an agreement. If the applicable collective bargaining agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a new agreement has been established, which shall be incorporated retroactively herein. It is further agreed that where the Employer works within the geographic jurisdiction of the Union's affiliated Local Unions that have negotiated an association agreement effective within the Local Union's jurisdiction, then the Local Union agreement is herein specifically incorporated into this Agreement and shall supersede the area-wide standard association agreements within the locality for which it is negotiated in the case of any conflict between them. Notwithstanding the foregoing, this Agreement supersedes all contrary terms in either the Local Union or area-wide association agreements.

3. **Dues Checkoff.** The Employer shall deduct from the wages of employees uniform working dues in the amount of 1.5% of gross wages, or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. It is the parties' intention that these deductions comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and such deductions be made only pursuant to written assignments from each employee on whose account such deductions are made, which shall not be irrevocable for a period of more than one year or beyond the termination date of the labor agreement, whichever occurs sooner.

4. **Work Jurisdiction.** This Agreement covers all work within the Union's work jurisdiction as set forth in the Union's Statement of Jurisdiction, receipt of which is hereby acknowledged, and as amended by the Union from time to time. The Statement of Jurisdiction is incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of this assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any work to be done at the site of construction, alteration, painting or repair of a building, structure or other work and com/or within the above-described jurisdiction of the Union to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. When the Employer contracts out or sublets any of the work coming within the above-described jurisdiction of the Union, it shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

5. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust ("LECET"), and to all other designated Union-affiliated benefit and labor-management funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust Instruments and amendments thereto. The Employer ratifies and confirms the appointment of the Employer Trustees who shall, together with their successor Trustees, carry out the terms and conditions of the Trust instruments. The Employer further affirms that all prior contributions paid to the Welfare, Pension and Training Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the Trust Agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable agreements. Upon written notice to the Employer, the Union may increase the minimum surety bond to an amount not exceeding one hundred thousand dollars where necessary to ensure Employer compliance with its obligations.

Where Laborers covered by this Agreement perform work outside the Union area, the Employer shall, if covered under a local LIUNA-affiliated labor agreement in the area, contribute to the local fringe benefit funds in the amounts set forth in the local agreement. Otherwise, it shall remit all fringe benefit fund contributions in the amounts and to the funds as required under this Agreement.

6. **Wages and Industry Funds.** The Employer shall pay all the negotiated hourly wages, fringe benefit and industry fund contributions it is bound to pay under the applicable Collective Bargaining Agreements, including, where applicable, contributions to the Chicago-Area LECET and designated labor-management and industry advancement funds, except that no contributions shall be made to MCIAF unless consented to and upon written direction from the Union. All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001 shall be incorporated into this Agreement. The Union expressly reserves its sole right to allocate and apportion each annual total economic increase.

7. **Contract Enforcement.** All grievances arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, subcontracting in violation hereof, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other lawful and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

8. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

9. **Termination.** This Agreement shall remain in full force and effect from June 1, 2001 (unless dated differently below) through May 31, 2006, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new area-wide negotiated agreements with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter, unless and until timely notice of termination is given.

10. **Execution.** The Employer acknowledges and accepts the facsimile signatures on this contract as if they were its original signatures. The Employer further acknowledges receipt of a copy of the complete Joint Agreements.

Dated: **December 10**, 20 **01**

**ACCEPTED:**

Laborers' Local Union No. **269**

By: **William C. Kelly**

**CONSTRUCTION AND GENERAL LABORERS'**
**DISTRICT COUNCIL OF CHICAGO AND VICINITY**

By: **Frank Riley, President & Secretary-Treasurer**

By: **James P. Connolly, Business Manager**

For Office Use Only:

#3 1005

**#31005**

**Dungan Const.** (Employer)

FEIN No.: _____

By: **Rodney Dungan**
(Print Name and Title)

**Rodney Dungan**
(Signature)

**7304½ So. Constance**
(Address)

**Chgo IL 60628**
(City, State and Zip Code)

**773-955-7147**
(Telephone / Fax)

RECEIVED DEC 17 2001 FIELD DEPT

WHITE – LOCAL UNION      CANARY – TRUST FUND      PINK – DISTRICT COUNCIL      GOLD – EMPLOYER

EXHIBIT A

### INSTALLMENT NOTE

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Funds" or collectively the "Funds"), the parties of the first part, and Dunigan Construction (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with Local 269 of the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the audit period of May 1, 2012 through September 30, 2014 plus April 2016 through August 2016 remittance reports.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the audit period of May 1, 2012 through September 30, 2014 plus April 2016 through August 2016 remittance reports.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $66,260.40 to the Health and Welfare Fund (comprised of $43,178.44 in delinquent contributions, $8,117.84 in liquidated damages and $14,964.12 in interest) (based on an interest rate of 12%). The Company will pay $12,091.56 to the Retiree Health and Welfare Fund (comprised of $9,452.63 in delinquent contributions, $1,341.60 in liquidated damages and $1,297.33 in interest). The Company will also pay $60,246.24 to the Pension Fund (comprised of $39,753.32 in delinquent contributions, $7,775.33 in liquidated damages and $12,717.59 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 3 and 4.

2. The Company will also pay $2,357.78 to the Training Fund (comprised of $1,936.10 in delinquent contributions, $193.61 in liquidated damages and $228.07 in interest), $1,492.93 to the LECET Fund (comprised of $1,232.22 in delinquent contributions, $123.22 in liquidated damages and $137.49 in interest), $2,748.29 to the LDCMC Fund (comprised of $2,280.25 in delinquent contributions, $228.03 in liquidated damages and $240.01 in interest), $47.21 to the CISCO Fund (comprised of $38.76 in delinquent contributions, $3.88 in liquidated damages and $4.57 in interest) $330.14 to the MARBA Fund (comprised of $271.09 in delinquent contributions, $27.11 in liquidated damages and $31.94 in interest) and $22,173.92 in union dues (comprised of $18,137.01 in delinquent contributions and $4,036.91 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time the Note is signed along with the amounts due in paragraph 3.

3. Simultaneously with the execution of this Note, the Company will pay $47,150.27 of total outstanding indebtedness, excluding note interest and including the delinquent amounts described above in paragraph 2, or $6,000.00 to the Health and Welfare Fund, $6,000.00 to the Retiree Health and Welfare Fund and $6,000.00 to the Pension Fund plus $22,173.92 to the Dues Fund, $2,748.29 to the LDCLMCC Fund, $1,492.93 to the LECET Fund, $2,357.78 to the Training Fund, $47.21 to the CISCO Fund and $330.14 to the MARBA Fund. The amount of $47,150.27 will be paid in two installments. The first installment of $23,575.14 is due April 1, 2017, and the second installment of $23575.13 is due June 1, 2017.

4. For thirty-six (36) consecutive months commencing on July 1, 2017 and ending on June 1, 2020, the Company will pay $1,673.90 per month to the Health and Welfare Fund, $169.21 to the Retiree Health and Welfare Fund and $1,506.84 per month to the Pension Fund.

5. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

6. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.



7. The monthly installment payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Funds' respective agreements and Declarations of Trust. If the monthly installment payments are not paid by the 30th day following the date on which payment should have been received, the monthly installment payment shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note, All amounts described in paragraph 1 herein shall immediately become due on the 30th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

8. This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

9. The Parties acknowledge and agree that any payments by the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

10. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

11. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the ___9___ day of the _MARCH_ 2017 , 2017.

Dunigan Construction

By: _Rubin Dunigan_

Title: _Pff Sidrff._

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By: _[signature]_

## GUARANTY OF PAYMENT AND INDEMNIFICATION

This Guaranty ("Guaranty") is made as of _MARCH 9/2017_ by the undersigned, _Rodney Dunigan_, (the "Guarantor"), to and for the benefit of the LABORERS' PENSION FUND AND THE LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (collectively, the "Funds").

WHEREAS, Dunigan Construction (the "Company") has agreed to pay a total of $167,748.47 to the Funds in settlement of the alleged delinquent contributions owed to the Funds and to be paid under the terms of a Settlement Agreement and Installment Note ("Note").

WHEREAS, the Funds are unwilling to enter into the Note unless the Guarantor executes this Guaranty; and

WHEREAS, the Guarantor has a financial interest in the Company and will be benefited by the Note;

NOW THEREFOREWHEREAS, in consideration of the foregoing, the Guarantor agrees as follows:

1. **Guaranty of Payment and Indemnification.** The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the thirty-six (36) month payment period including interest and liquidated damages for late or unpaid payments due on the Note; and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, and if involved, whether at the trial or appellate levels or in pre- or post-judgment bankruptcy proceedings in enforcing or realizing upon the obligations of the Guarantor hereunder (the obligations of Guarantor under this Paragraph 1 are collectively hereinafter referred to as the "Obligations"). The Guarantor also agrees to be personally liable for all monthly benefit contributions, union dues and/or wages owed from the Company to the Funds, the District Council, all ancillary funds, and/or the participants that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

2. **Continuing Guaranty.** This Guaranty shall be a continuing Guaranty, and shall not be discharged, impaired or affected by; (a) the existence or continuance of any obligation on the part of the Company with respect to the Note; (b) any forbearance or extension of the time of payment of the Note; (c) the validity or invalidity of the Note; (d) any defenses whatsoever that the Company or any of the party thereto may have to the performance or observance of any term, covenant or condition contained in the Note; (e) the existence or non-existence of the Company as a legal entity; (f) any limitation or exculpation of (other than the payment and performance in full of all of the Company's Obligations) that Guarantor may have as to his undertakings, liabilities and obligations hereunder, including any defenses based upon any legal disability of the Company or any discharge or limitation of the disability of the Company, whether consensual or arising by operation of law or any bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, each and every such defense being hereby waived by the Guarantor. However, this Guaranty shall terminate upon the Note being paid in full.

3. **Waivers.** Guarantor waives diligence, presentment, protest, notice of dishonor, demand for payment, extension of time of payment, notice of acceptance of this Guaranty, non-payment at maturity and indulgences and notices of every kind not provided for under this Guaranty. It is the intention of this Guaranty that Guarantor shall remain liable as principal, notwithstanding any act, omission or thing that might otherwise operate as a legal or equitable discharge of Guarantor, until all of the Company's obligations shall have been fully paid and performed.

4. **Subrogation.** Notwithstanding anything to the contrary elsewhere contained herein or in the Note, the Guarantor(s) expressly waive with respect to the Company any and all rights at law or in equity to subrogation, to reimbursement, to exoneration, to contribution, to set off or to any other rights that could accrue to a surety against a principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company

1



in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. **Independent Obligations.** The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. **Acceleration.** In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. **Effect of Bankruptcy.** This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. **Termination.** This Guaranty shall remain in full force and effect as to the Guarantor until all of the Company's Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. **The Company's Financial Condition.** The Guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. **Expenses.** The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. **Delay, Cumulative Remedies.** No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. **Binding Effect.** This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. **Default.** The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after thirty (30) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any

2

such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. **Warranties.** Guarantor makes to the Funds the following representations and warranties:

(a) **Authorization.** Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder.

(b) **No Conflict.** The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) **Litigation.** There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) **Enforceability.** This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. **Notices.** All notices or other communications required or permitted hereunder shall be (a) in writing and shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

*Rodney Donigan*
*72008 St. Page*
*Cal. Page 60844*

In Case of the Funds:

Collection Counsel
Kelly Carson
Laborers Pension and Welfare Fund
Sub Office
111 W Jackson Blvd Ste 1415
Chicago IL 60604-3868

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided.

16. **Additional Waivers.** Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. **Severability.** If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

3

18. **Applicable Law; Venue.** This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and enter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. **Time is of the Essence.** Time is of the essence of this Guaranty as to the performance of the undersigned.

20. **Death of a Guarantor.** In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this instrument as of the date and year first above written.

_[signature]_

Social Security Number

Date: _MARCH 9/2018_

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR;

Dated: _____

4

**NO SSN REPORT**

**Revised December 3, 2018**

<u>Dunigan Construction</u>
<u>445 W 79th St.</u>
<u>Chicago, IL 60620</u>

<u>Employer Number:31005</u>

<u>October 1, 2014 through September 30, 2016</u>





# LEGACY
PROFESSIONALS LLP
CERTIFIED PUBLIC ACCOUNTANTS

To the Administrator of
Pension and Welfare Funds of Construction and General
   Laborers' District Council of Chicago and Vicinity

Re:  Dunigan Construction
     Reporting Period: October 1, 2014 through September 30, 2016

We were engaged by the Board(s) of Trustees of the Pension and Welfare Funds of Construction and General
Laborers' District Council of Chicago and Vicinity, (the Funds) to assist you in determining whether
contributions to the Funds were made in accordance with the Collective Bargaining and Trust Agreements
during the above referenced reporting period.

The management of Dunigan Construction is responsible for making contributions in accordance with the
requirements of the Collective Bargaining and Trust Agreements.

This engagement was performed in accordance with Statements on Standards for Consulting Services issued by
the American Institute of Certified Public Accountants. We were not engaged to, and did not, conduct an audit,
the objective of which would be the expression of an opinion. Accordingly, we do not express such an opinion.
Had we performed additional procedures, other matters might have come to our attention that would have been
reported to you.

Our procedures and findings are included in the attached schedules.

The findings of this report should not be construed as an endorsement or ratification of any of the Employer's
contribution practices. The findings are based solely on those documents that the Employer provided to us. We
have not been retained to provide, and do not provide, any interpretation or advice concerning any terms of the
collective bargaining agreement between the Employer and the Union or the terms of the Funds' respective
Agreement and Declarations of Trust. All questions concerning the Employer's contribution practices, or any
contributions or benefits-related issue, should be directed to the Union or the Fund office. No failure to note an
exception to any of the employer's contribution practices should be construed as a ratification of such practice
or waiver of the Union or the Funds' ability to challenge such practice in the future.

This report is intended solely for the information and use of the Trustees and Administrator of the Pension and
Welfare Funds of Construction and General Laborers' District Council of Chicago and Vicinity, and is not
intended to be and should not be used by anyone other than these specified parties.

*Legacy Professionals LLP*

Westchester, Illinois

December 3, 2018

**LEGACY PROFESSIONALS, LLP**
**COMPLIANCE AUDIT INFORMATION SHEET**

| | | | |
|---|---|---|---|
| EMPLOYER NAME | Dunigan Construction | EMPLOYER # | 31005 |
| ADDRESS | 445 W 79th St. | PHONE # | (773) 723-2063 |
| CITY/STATE/ZIP | Chicago, IL 60620 | FEIN # | |
| DATE OF CONTACT | November 8, 2016 | AUDIT PERIOD | October 1, 2014 through September 30, 2016 |
| CONTACT'S NAME | Jolynn Payton | TITLE | Financial Administrator |
| PERSON FUND IS TO CONTACT | SAME AS ABOVE | TITLE | SAME AS ABOVE |
| ENTITY TYPE | CORPORATION | FIELD REPRESENTATIVE | Rocco Marcello |
| MAIN BUSINESS ACTIVITY | Masonry Contractor | AUDIT DATE | December 13, 2016 |

AVERAGE NUMBER OF EMPLOYEES:      22

AVERAGE NUMBER OF CHICAGO LABORERS:      6

AVERAGE ANNUAL GROSS REVENUE PER YEAR:      $      5,833,160

| OWNERSHIP-PRINCIPALS | TITLE | % | ADDRESS |
|---|---|---|---|
| Rodney Dunigan | | 100% | 445 W. 79th St Chicago, Illinois 60620 |
| | | | |

BANKING FACILITIES USED AND ACCOUNT NUMBER:    Urban Partnership Bank-XXXX
             Chase Bank-XXXX

DOES EMPLOYER HAVE INTEREST IN OTHER OPERATIONS ?    ☐ YES    ☑ NO

IF YES, LIST NAME OF SAME

3

IS EMPLOYER A MEMBER OF ANY TRADE ORGANIZATION/ASSOCIATION?

☐ YES ☑ NO

IF YES, LIST NAME OF SAME _____

AUDIT SITE (IF DIFFERENT FROM EMPLOYER'S ADDRESS):

12300 S. Page St.

Calumet Park, IL 60827

(Employer's New Office)

ALL REQUIRED ACCOUNTING RECORDS WERE AVAILABLE WITH THE EXCEPTION OF:

All required records were provided.

BRIEFLY DESCRIBE THE NATURE OF THE DELINQUENCY, IF ANY:

The employer made clerical errors. The employer failed to report several months of contributions. There were several occasions when an employees payroll was less than their quarterly taxes. The were multiple occasions when an employees time card had more hours than their payroll. Two unverified employees were included in our report.

DID YOUR EXAMINATION UNCOVER ANYTHING SPECIAL OR UNUSUAL WHICH SHOULD BE BROUGHT TO

THE ATTENTION OF THE FUND COUNSEL OR OTHER INTERESTED PERSONS?

☑ YES ☐ NO

IF YES, EXPLAIN: When an employees provided payroll was less than their quarterly tax document we divided the difference in wages by the employees wage rate at the time to come up with additional hours worked. For example, an employees SUTA wages were $19,332.50 and payroll wages were $19,028.50 for the quarter. ($19,332.50-19,028.50=$304, $304/$38=8)

We noted frequent ATM and cash withdrawals during the audit period.

Revision December 3, 2018 - The report was revised to remove hours and wages for April 2016 through August 2016 for members included in a settlement agreement.

AUDITOR: Jeffery Hatcher _____

4

## Laborers' District Council
## Reconciliation of Differences Per Year

| Fiscal Year Ending | 5-31-2013 | 5-31-2014 | 5-31-2015 | 5-31-2016 | 5-31-2017 | 5-31-2018 | Total Due |
|---|---|---|---|---|---|---|---|
| Fringe Hours Not Reported | | | 1,586.25 | 442.50 | 564.50 | - | 2,593.25 |
| Dues Hours Not Reported | | | 6,367.75 | 434.50 | 564.50 | - | 7,366.75 |
| Dues Wages Not Reported | | | 218,663.00 | 2,469.60 | 15,999.70 | - | 237,132.30 |
| | | | | | | | |
| **Dollar Amount Due** | | | | | | | |
| Welfare (Active) | - | - | 15,830.78 | 4,416.15 | 5,633.71 | - | 25,880.64 |
| Welfare (Retiree) | | - | 6,027.75 | 1,770.00 | 2,399.14 | - | 10,196.89 |
| Pension | | - | 16,052.85 | 4,743.60 | 6,531.28 | - | 27,327.73 |
| Training | | - | 793.13 | 221.25 | 282.25 | - | 1,296.63 |
| IAF | | - | 111.05 | 30.98 | 39.53 | - | 181.56 |
| CISCO | | - | 15.88 | 4.43 | 5.66 | - | 25.97 |
| LECET | | - | 445.77 | 30.42 | 39.53 | - | 515.72 |
| LDCLMCC | | - | 764.13 | 73.87 | 95.98 | - | 933.98 |
| Working Dues | | - | 7,106.56 | 92.61 | 599.99 | - | 7,799.16 |
| **Total** | $ - | $ - | $ 47,147.90 | $ 11,383.31 | $ 15,627.07 | $ - | $ 74,158.28 |

| | | |
|---|---|---|
| Plus previous late charges assessed by Laborers' Pension and Welfare Funds | | $ 12,906.95 |
| Plus previous underpayments incurred to Laborers' Pension and Welfare Funds | | $ - |
| Plus previous underpayments incurred to Laborers' District Council Funds | | $ 357.86 |
| Audit Fee | | $ 6,786.26 |
| | **Total Amount Due** | $ 94,209.35 |

| | | | |
|---|---|---|---|
| Employer Name: | Dunigan Construction | Person Contacted: | Jolynn Payton |
| Employer #: | 31005 | Date of Contact: | November 8, 2016 |
| Date of Audit: | December 13, 2016 | Telephone: | (773) 723-2063 |
| Audit Period : | October 1, 2014 through September 30, 2016 | Auditor: | Jeffery Hatcher |

5

## Laborers' District Council
### Schedule of Deficiencies

Employer Name: Dunigan Construction
Employer Number: 33005
Agreement Type: IMARBA

Audit Period: October 1, 2014 through September 30, 2016
Date of Audit: December 13, 2016
Field Auditor: Jeffery Hatcher

| SSN | Name | | Jun | Jul | Aug | Sep (2014) | Oct | Nov | Dec | Jan | Feb | Mar (2015) | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | BLOMMAERT JR., JAMES (UNVERIFIED EMPLOYEE) | Fringe Hours | | | | | 67.50 | 40.00 | | | | | | | 107.50 |
| | | Dues Hours | | | | | 67.50 | 40.00 | | | | | | | 107.50 |
| | | Dues Wages | | | | | 2,565.00 | 1,520.00 | | | | | | | 4,085.00 |
| | CISNEROS, ALEJANDRO (UNVERIFIED EMPLOYEE) | Fringe Hours | | | | | 40.00 | | | | | | | | 40.00 |
| | | Dues Hours | | | | | 40.00 | | | | | | | | 40.00 |
| | | Dues Wages | | | | | 1,520.00 | | | | | | | | 1,520.00 |
| | BARRERA, FRANCISCO | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | 145.00 | 175.00 | 99.00 | | | | | | 419.00 |
| | | Dues Wages | | | | | 5,510.00 | 7,191.50 | 3,762.00 | | | | | | 16,463.50 |
| | CHAVEZ, JOSE | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | 163.00 | 152.00 | 110.50 | | | | | | 425.50 |
| | | Dues Wages | | | | | 6,365.00 | 6,479.00 | 4,199.00 | | | | | | 17,043.00 |
| | DESIDERIO, JORGE | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | 138.50 | 156.00 | 115.00 | | | | | | 409.50 |
| | | Dues Wages | | | | | 5,263.00 | 6,650.00 | 4,522.00 | | | | | | 16,435.00 |
| | LOPEZ, HUGO | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | 163.00 | 157.00 | 114.00 | | | | | | 434.00 |
| | | Dues Wages | | | | | 6,365.00 | 6,631.00 | 4,332.00 | | | | | | 17,328.00 |
| | MILES, BRUCE | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | 129.50 | 127.00 | 55.50 | | | | | | 312.00 |
| | | Dues Wages | | | | | 4,921.00 | 4,826.00 | 2,109.00 | | | | | | 11,856.00 |
| | RAMIREZ, RAUL | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | 151.00 | 178.50 | 113.00 | | | | | | 442.50 |
| | | Dues Wages | | | | | 5,890.00 | 7,324.50 | 4,294.00 | | | | | | 17,508.50 |
| | RENTERIA, JAIME | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | 142.00 | 188.00 | 110.00 | 16.00 | | | | | 456.00 |
| | | Dues Wages | | | | | 5,548.00 | 7,666.50 | 4,180.00 | 608.00 | | | | | 18,002.50 |
| | RUBIO, ALEJANDRO | Fringe Hours | | | | | | | | | | | | | - |
| | | Dues Hours | | | | | 146.00 | 152.00 | 40.00 | | | | | | 338.00 |
| | | Dues Wages | | | | | 5,719.00 | 6,479.00 | 1,520.00 | | | | | | 13,718.00 |

*On payroll but not on provided tax documents.

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Fringe Hours | - | - | - | - | 107.50 | 40.00 | | | - | - | - | - | 147.50 |
| Total Dues Hours | - | - | - | - | 1,285.50 | 1,325.50 | 757.00 | 16.00 | - | - | - | - | 3,384.00 |
| Total Wages | - | - | - | - | 49,666.00 | 54,767.50 | 28,918.00 | 608.00 | - | - | - | - | 133,959.50 |

| | rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare (Active) | $9.98 | - | - | - | - | 1,072.85 | 399.20 | - | - | - | - | - | - | 1,472.05 |
| Welfare (Retiree) | $3.80 | - | - | - | - | 408.50 | 152.00 | - | - | - | - | - | - | 560.50 |
| Pension | $10.12 | - | - | - | - | 1,087.90 | 404.80 | - | - | - | - | - | - | 1,492.70 |
| Training | $0.50 | - | - | - | - | 53.75 | 20.00 | - | - | - | - | - | - | 73.75 |
| IAF | $0.07 | - | - | - | - | 7.53 | 2.80 | - | - | - | - | - | - | 10.33 |
| CISCO | $0.01 | - | - | - | - | 1.08 | 0.40 | - | - | - | - | - | - | 1.48 |
| LECET | $0.07 | - | - | - | - | 89.99 | 92.79 | 52.99 | 1.12 | - | - | - | - | 236.89 |
| LDCLMCC | $0.01 | - | - | - | - | 154.26 | 159.06 | 90.84 | 1.92 | - | - | - | - | 406.08 |
| Working Dues | 3.25% | - | - | - | - | 1,614.15 | 1,779.94 | 939.84 | 19.76 | - | - | - | - | 4,353.69 |
| SHEET TOTAL | | - | - | - | - | 4,490.01 | 3,010.99 | 1,083.67 | 22.80 | - | - | - | - | 8,607.47 |

## Laborers' District Council
### Schedule of Deficiencies

Employer Name: Dunigan Construction
Employer Number: 31005
Agreement Type: IMARBA

Audit Period: October 1, 2014 through September 30, 2016
Date of Audit: December 13, 2016
Field Auditor: Jeffery Hatcher

| SSN | Name | | Jun | Jul | Aug | Sep (2014) | Oct | Nov | Dec | Jan | Feb | Mar (2015) | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | STEWART, RONALD | Fringe Hours | | | | | | | | | | | | | |
| | | Dues Hours | | | | | 148.00 | 143.00 | 96.00 | 11.00 | | | | | 398.00 |
| | | Dues Wages | | | | | 5,776.00 | 6,080.00 | 3,648.00 | 418.00 | | | | | 15,922.00 |
| | CISNEROS, DAVID | Fringe Hours | | | | | | | | | | | | | |
| | | Dues Hours | | | | | 96.00 | 132.50 | 80.00 | | | | | | 308.50 |
| | | Dues Wages | | | | | 3,648.00 | 5,035.00 | 3,040.00 | | | | | | 11,723.00 |
| | MENDOZA, JULIO | Fringe Hours | | | | | | | | | | | | | |
| | | Dues Hours | | | | | 111.50 | 138.50 | 72.00 | | | | | | 322.00 |
| | | Dues Wages | | | | | 4,237.00 | 5,833.00 | 2,888.00 | | | | | | 12,958.00 |
| | AVELAR, JOSE | Fringe Hours | | | | | | | | | | | | | |
| | | Dues Hours | | | | | 48.00 | 149.50 | 114.00 | | | | | | 311.50 |
| | | Dues Wages | | | | | 1,824.00 | 5,690.50 | 4,332.00 | | | | | | 11,846.50 |
| | DURHAM, ANTHONY | Fringe Hours | | | | | | | | | | | | | |
| | | Dues Hours | | | | | | 116.00 | 89.00 | | | | | | 205.00 |
| | | Dues Wages | | | | | | 4,655.00 | 3,382.00 | | | | | | 8,037.00 |
| | VARGAS, ROLE | Fringe Hours | | | | | | | | | | | | | |
| | | Dues Hours | | | | | | | | | | | | 1,273.00 | 1,273.00 |
| | | Dues Wages | | | | | | | | | | | | | |
| | RAMIREZ, RAUL (WAGE DISCREPANCY) | Fringe Hours | | | | | 8.00 | | | | | | | | 8.00 |
| | | Dues Hours | | | | | 8.00 | | | | | | | | 8.00 |
| | | Dues Wages | | | | | 304.00 | | | | | | | | 304.00 |
| | AVELAR, JOSE (TIME CARD DISCREPANCY) | Fringe Hours | | | | | 8.00 | | 2.50 | 17.00 | | | | | 27.50 |
| | | Dues Hours | | | | | 8.00 | | 2.50 | 17.00 | | | | | 27.50 |
| | | Dues Wages | | | | | | | | | | | | | |
| | BARRERA, FRANCISCO (TIME CARD DISCREPANCY) | Fringe Hours | | | | | | | | 25.00 | 8.00 | | 1.50 | | 34.50 |
| | | Dues Hours | | | | | | | | 25.00 | 8.00 | | 1.50 | | 34.50 |
| | | Dues Wages | | | | | | | | | | | | | |
| | CHAVEZ, JOSE (TIME CARD DISCREPANCY) | Fringe Hours | | | | | | | | | 8.00 | | | | 8.00 |
| | | Dues Hours | | | | | | | | | 8.00 | | | | 8.00 |
| | | Dues Wages | | | | | | | | | | | | | |
| | | Total Fringe Hours | | | | | 16.00 | | | 42.00 | 16.00 | | 1.50 | | 78.00 |
| | | Total Dues Hours | | | | | 419.50 | 679.50 | 453.50 | 53.00 | 16.00 | | 1.50 | 1,273.00 | 1,623.00 |
| | | Total Wages | | | | | 15,789.00 | 27,293.50 | 17,290.00 | 418.00 | | | | | 62,063.50 |

| | Rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare (Active) | $9.98 | | | | | 159.68 | | | 419.16 | 159.68 | | 14.97 | | 778.44 |
| Welfare (Retiree) | $3.80 | | | | | 60.80 | | | 159.60 | 60.80 | | 5.70 | | 296.40 |
| Pension | $10.12 | | | | | 161.92 | | | 425.04 | 161.92 | | 15.18 | | 789.36 |
| Training | $0.50 | | | | | 8.00 | | | 21.00 | 8.00 | | 0.75 | | 39.00 |
| IAF | $0.07 | | | | | 1.12 | | | 2.94 | 1.12 | | 0.11 | | 5.47 |
| CISCO | $0.01 | | | | | 0.16 | | | 0.42 | 0.16 | | 0.02 | | 0.79 |
| LECET | $0.07 | | | | | 29.37 | 47.57 | 31.75 | 3.71 | 1.12 | | 0.11 | | 113.63 |
| LDCLMCC | $0.12 | | | | | 50.34 | 81.54 | 54.42 | 6.36 | 1.92 | | 0.18 | | 194.76 |
| Working Dues | 3.25% | | | | | 513.14 | 887.04 | 561.93 | 13.59 | | | | 41.37 | 2,017.07 |
| SHEET TOTAL | | | | | | 984.53 | 1,016.15 | 709.31 | 1,051.82 | 394.72 | | 37.02 | 41.37 | 4,334.92 |

# Laborers' District Council

## Schedule of Deficiencies

Employer Name: Dunigan Construction
Employer Number: 31005
Agreement Type: IMARBA

Audit Period: October 1, 2014 through September 30, 2016
Date of Audit: December 13, 2016
Field Auditor: Jeffery Hatcher

| SSN | Name | | Jun | Jul | Aug | Sep (2014) | Oct | Nov | Dec | Jan (2015) | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CISNEROS, DAVID (TIME CARD DISCREPANCY) | Fringe Hours | | | | | | | 3.50 | | | | | | 3.50 |
| | | Dues Hours | | | | | | | 3.50 | | | | | | 3.50 |
| | | Dues Wages | | | | | | | | | | | | | - |
| | DURHAM, ANTHONY (TIME CARD DISCREPANCY) | Fringe Hours | | | | | | | 8.00 | 8.00 | 20.00 | | | | 36.00 |
| | | Dues Hours | | | | | | | 8.00 | 8.00 | 20.00 | | | | 36.00 |
| | | Dues Wages | | | | | | | | | | | | | - |
| | RAMIREZ, RAUL (TIME CARD DISCREPANCY) | Fringe Hours | | | | | | | 1.00 | | | | | | 1.00 |
| | | Dues Hours | | | | | | | 1.00 | | | | | | 1.00 |
| | | Dues Wages | | | | | | | | | | | | | - |
| | RENTERIA, JAIME (TIME CARD DISCREPANCY) | Fringe Hours | | | | | | | 1.00 | 18.00 | | | | | 19.00 |
| | | Dues Hours | | | | | | | 1.00 | 18.00 | | | | | 19.00 |
| | | Dues Wages | | | | | | | | | | | | | - |
| | RUBIO, ALEJANDRO (TIME CARD DISCREPANCY) | Fringe Hours | | | | | | | 7.50 | 8.00 | | | | | 15.50 |
| | | Dues Hours | | | | | | | 7.50 | 8.00 | | | | | 15.50 |
| | | Dues Wages | | | | | | | | | | | | | - |
| | STEWART, RONALD (TIME CARD DISCREPANCY) | Fringe Hours | | | | | | | 8.00 | 18.00 | | | | | 26.00 |
| | | Dues Hours | | | | | | | 8.00 | 18.00 | | | | | 26.00 |
| | | Dues Wages | | | | | | | | | | | | | - |
| | VARGAS, ROLE (TIME CARD DISCREPANCY) | Fringe Hours | | | | | | | | | | | 2.00 | | 2.00 |
| | | Dues Hours | | | | | | | | | | | 2.00 | | 2.00 |
| | | Dues Wages | | | | | | | | | | | | | - |
| | BLOMMAERT JR., JAMES (DISBURSEMENT) | Fringe Hours | | | | | | | | | 80.00 | | | | 80.00 |
| | | Dues Hours | | | | | | | | | 80.00 | | | | 80.00 |
| | | Dues Wages | | | | | | | | | 1,440.00 | | | | 1,440.00 |
| | BARRERA, FRANCISCO (DISBURSEMENT) | Fringe Hours | | | | | | | | | | 66.75 | | | 66.75 |
| | | Dues Hours | | | | | | | | | | 66.75 | | | 66.75 |
| | | Dues Wages | | | | | | | | | | 1,200.00 | | | 1,200.00 |
| | MALDONADO, JOSE (DISBURSEMENT) | Fringe Hours | | | | | | | | | | | 1,111.00 | | 1,111.00 |
| | | Dues Hours | | | | | | | | | | | 1,111.00 | | 1,111.00 |
| | | Dues Wages | | | | | | | | | | | 20,000.00 | | 20,000.00 |

| | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Fringe Hours | - | - | - | - | - | - | 29.00 | 52.00 | 100.00 | 66.75 | 1,113.00 | - | 1,360.75 |
| Total Dues Hours | - | - | - | - | - | - | 29.00 | 52.00 | 100.00 | 66.75 | 1,113.00 | - | 1,360.75 |
| Total Wages | - | - | - | - | - | - | - | - | 1,440.00 | 1,200.00 | 20,000.00 | - | 22,640.00 |

| | Rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare (Active) | $9.98 | - | - | - | - | - | - | 289.42 | 518.96 | 998.00 | 666.17 | 11,107.74 | - | 13,580.29 |
| Welfare (Retiree) | $3.80 | - | - | - | - | - | - | 110.20 | 197.60 | 380.00 | 253.65 | 4,229.40 | - | 5,170.85 |
| Pension | $10.12 | - | - | - | - | - | - | 293.48 | 526.24 | 1,012.00 | 675.51 | 11,263.56 | - | 13,770.79 |
| Training | $0.50 | - | - | - | - | - | - | 14.50 | 26.00 | 50.00 | 33.38 | 556.50 | - | 680.38 |
| IAF | $0.07 | - | - | - | - | - | - | 2.03 | 3.64 | 7.00 | 4.67 | 77.91 | - | 95.25 |
| CISCO | $0.01 | - | - | - | - | - | - | 0.29 | 0.52 | 1.00 | 0.67 | 11.13 | - | 13.61 |
| LECET | $0.07 | - | - | - | - | - | - | 2.03 | 3.64 | 7.00 | 4.67 | 77.91 | - | 95.25 |
| LDCLMCC | $0.12 | - | - | - | - | - | - | 3.48 | 6.24 | 12.00 | 8.01 | 133.56 | - | 163.29 |
| Working Dues | 3.25% | - | - | - | - | - | - | 715.43 | 1,282.84 | 2,513.80 | 1,685.73 | 28,107.71 | - | 34,305.51 |
| SHEET TOTAL | | | | | | | | | | | | | | |

8

12/15/18

# LABORERS' PENSION & WELFARE FUNDS

## SUMMARY OF AMOUNTS OWED

**Audit Period** October 1, 2014 through September 30, 2016

**EMPLOYER** Dunigan Construction

CODE  31005

| PERIOD | FRINGE HOURS | DUES HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | LECET | RATE | MARBA IAF | RATE | MARBA CISCO | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6-1-10 to 5-31-11 | | | | 10.63 | | | | 8.57 | | 0.45 | | | | | | | 0.07 | | 0.01 | |
| 6-1-11 to 5-31-12 | | | | 12.18 | | | | 8.82 | | 0.45 | | | | | | | 0.07 | | 0.01 | |
| 6-1-12 to 5-31-13 | | | | 12.78 | | | | 9.02 | | 0.50 | | | 0.12 | | | | 0.07 | | 0.01 | |
| 6-1-13 to 5-31-14 | | | | 13.38 | | | | 9.52 | | 0.50 | | | 0.12 | | | | 0.07 | | 0.01 | |
| 6-1-14 to 5-31-15 | 1,586.25 | 6,367.75 | 15,830.78 | 9.98 | 6,027.75 | 3.80 | 16,052.85 | 10.12 | 793.13 | 0.50 | 7,106.56 | 764.13 | 0.12 | 445.77 | 0.07 | 111.05 | 0.07 | 15.88 | 0.01 | 47,147.78 |
| 6-1-15 to 5-31-16 | 442.50 | 434.50 | 4,416.15 | 9.98 | 1,770.00 | 4.00 | 4,743.60 | 10.72 | 221.25 | 0.50 | 92.61 | 73.87 | 0.12 | 30.42 | 0.07 | 30.98 | 0.07 | 4.43 | 0.01 | 11,383.81 |
| 6-1-16 to 5-31-17 | 564.50 | 564.50 | 5,633.71 | 9.98 | 2,399.14 | 4.25 | 6,531.28 | 11.57 | 282.25 | 0.50 | 599.99 | 95.98 | 0.17 | 39.53 | 0.07 | 39.53 | 0.07 | 5.66 | 0.01 | 15,627 |
| 6-1-17 to 5-31-18 | | | | 10.15 | | 4.50 | | 12.32 | | 0.50 | | | 0.17 | | | | 0.07 | | 0.01 | |
| 6-1-18 to 5-31-19 | | | | 10.15 | | 4.75 | | 12.57 | | 0.72 | | | 0.17 | | | | 0.07 | | 0.01 | |
| **SUBTOTAL** | 2,593.25 | 7,366.75 | 25,880.64 | | 10,196.89 | | 27,327.73 | | 1,296.63 | | 7,799.16 | 933.98 | | 515.72 | | 181.56 | | 25.97 | | 74,158.80 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | | | | 924.89 |
| 20% LIQUIDATED DAMAGES | | | 5,176.13 | | 2,039.38 | | 5,465.55 | | 259.33 | | 779.92 | 93.40 | | 51.57 | | 36.31 | | 5.19 | | 12,981.58 |
| AUDIT COSTS | | | 2,307.33 | | 2,239.47 | | 2,239.46 | | | | | | | | | | | | | 6,786.26 |
| ATTORNEY FEES | | | | | | | | | | | | | | | | | | | | |
| ACCUM. LIQUIDATED DAMAGES | | | 4,895.86 | | 2,163.08 | | 5,848.01 | | | | 357.86 | | | | | | | | | 13,264.81 |
| ACCUM. INTEREST | | | 11,246.95 | | 4,384.77 | | 11,727.60 | | | | | 477.76 | | 269.64 | | 78.90 | | 11.29 | | 28,760.? |
| **TOTAL DUE** | | | 49,506.91 | | 21,023.59 | | 52,608.35 | | 2,119.44 | | 8,936.94 | 1,505.14 | | 836.93 | | 296.77 | | 42.45 | | 136,876.? |



EXHIBIT